UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUGENE THOMAS AND
WALTER JAMIL,

       Plaintiffs,

v.                               Case No. 13-10378

PARVIZ DANESHGARI,          HON. TERRENCE G. BERG
HAROLD BRESLIN, SAMIR        HON. PAUL J. KOMIVES
SHABENDER AND COMPUTER
BUSINESS WORLD, LLC,

       Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT (DKT. 41), GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. 24), DENYING DEFENDANTS' MOTION FOR SANCTIONS (DKT. 25) AND DENYING PLAINTIFFS' MOTION TO COMPEL (DKT. 29)**

This case arises from a long-standing business dispute between Plaintiffs Eugene Thomas and Walter Jamil (collectively "Plaintiffs") and Defendants Parviz Daneshgari, Harold Breslin, Samir Shabender and Computer Business World, LLC (collectively "Defendants"). The procedural history of this dispute is recounted in greater detail below. Briefly, Plaintiffs sold several business entities to Daneshgari for $2,000,000 in cash, a $700,000 promissory note and the assumption of $1,371,237.85 in debt. Several months after the sale, Daneshgari came to believe that Plaintiffs had misrepresented certain allegedly fraudulent practices of the businesses. Daneshgari sued Plaintiffs, and the parties arbitrated their claims in front of arbitrator Edward Pappas. Daneshgari prevailed in the arbitration, and

obtained a $2,800,000 award, which was later confirmed in the Oakland County Circuit Court and reduced to a civil judgment against Plaintiffs. Daneshgari then sought to collect this judgment and, in response, Plaintiffs filed for bankruptcy. The Bankruptcy Judge, Honorable Steven Rhodes, ruled that the $2.8 million judgment was non-dischargeable. *See Computer Business World, LLC v. Jamil (In re Jamil),* 409 B.R. 866 (Bankr. E.D. Mich. 2009). Plaintiffs appealed this ruling, but Judge Rhodes's decision was affirmed by Honorable Arthur J. Tarnow of this Court. Plaintiffs also sought appellate relief through the state court system, but the civil judgment was affirmed by the Michigan Court of Appeals. This lawsuit is based on Plaintiffs' contention that "newly discovered evidence" indicates that Defendants perjured themselves in the arbitration proceedings.

Currently before the Court are: Plaintiffs' motion for leave to file a second amended complaint (Dkt. 41), and Defendants' motions to dismiss (Dkt. 24) and for sanctions (Dkt. 25). For the reasons stated below, Plaintiffs' motion for leave to amend is **DENIED**, Defendants' motion to dismiss is **GRANTED** and Defendants' motion for sanctions is **DENIED**. More specifically, the Court finds that Plaintiffs' two federal claims – under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Fair Debt Collection Practices Act ("FDCPA") – fail to state a claim upon which relief can be granted. Therefore, these claims are **DISMISSED WITH PREJUDICE**. As to Plaintiffs' remaining state law claims, the Court declines to exercise supplemental jurisdiction over them, and thus they are **DISMISSED WITHOUT PREJUDICE**. Finally, Plaintiffs also filed a motion to

compel discovery from Defendants (Dkt. 29). Since the Court dismisses all pending claims, Plaintiffs' motion to compel is **DENIED AS MOOT**.

## I.  BACKGROUND

After a review of the pleadings, the relevant facts, taken in a light most favorable to Plaintiffs, are as follows.

In 1999, Plaintiffs founded a company called Computer Builders Warehouse – with several subsidiaries and related entities – the primary business of which was retail computer sales (Dkt. 9, First Amd. Compl. ¶¶ 11-14). After achieving some success with their business, in July 2006, Plaintiffs sold the company and most of its attendant entities to Defendant Parviz Daneshgari ("Daneshgari"). *Id.* at ¶¶ 68-71. To run this new business, Daneshgari founded Defendant Computer Business World, LLC ("CBW") and kept at least two of Plaintiffs' former employees on staff, specifically, Defendants Harold G. Breslin, ("Breslin") and Samir Shabander ("Shabander"). *Id.* at ¶¶ 68-74.

Plaintiffs were supposed to retain a minority interest in the business, and were under contract to perform services for the business for 1 year after the sale. *Id.* Shortly after the sale, however, Daneshgari made a series of business decisions that Plaintiffs claim were intended to cheat them out of the benefits of their minority interest in the company. *Id.* at ¶¶ 74-93. In particular, Plaintiffs allege that Daneshgari, Breslin, and Shabander "conspired to bleed the business and drain the assets of CBW." *Id.* at ¶ 185. This bleeding of the business, according to Plaintiffs, consisted of Daneshgari increasing the company's line of credit,

3

liquidating inventory, moving assets between retail locations, adjusting the working capital downward by almost $700,000[1] and intentionally paying above market rents and exorbitant consulting fees to himself and his other entities. *Id.* ¶¶ 74-93.

In the fall of 2007, Daneshgari began an arbitration proceeding against Plaintiffs, claiming that Plaintiffs fraudulently induced him to purchase the company by hiding certain questionable business practices from him prior to the completion of the sale of the company. *Id.* at ¶ 94-99. In the present lawsuit, Plaintiffs allege that the arbitration testimony of Daneshgari, Breslin, and Shabander was false with regard to Daneshgari's lack of knowledge of the questionable business practices prior to the sale of the company, his opportunities to learn of such questionable business practices during the due diligence phase of the transaction, and the effects those business practices had on the company's relationship with its suppliers after the sale. *Id.*

At the conclusion of the arbitration proceeding Daneshgari won a $2.8 million award and the arbitrator's opinion specifically stated that Plaintiffs acted fraudulently with regard to the sale of their business. *Id.* Daneshgari subsequently had the award confirmed as a judgment in state court. *Id.* at ¶ 100. Plaintiffs claim that Daneshgari, Breslin, and Shabander all submitted perjured testimony during the arbitration proceeding, and that as such, the arbitration proceeding was secured "fraudulently." *Id.* at ¶¶ 96-99. Plaintiffs further allege that the perjured

---

[1]This downward adjustment was effected pursuant to the presumably independent opinion of business consulting and accounting firm Plante & Moran (Dkt. 25, Defs' Mot. for Sanc. at 2 (quoting *Computer Business World, LLC v. Jamil (In re Jamil),* 409 B.R. 866, 869 (Bankr. E.D. Mich. 2009)).

arbitration testimony was submitted with the intent to secure a judgment against them that could be declared non-dischargeable in federal bankruptcy proceedings. *Id. ¶ 139.* The judgment was, in fact, declared non-dischargeable in federal bankruptcy proceedings. *See Computer Business World, LLC v. Jamil (In re Jamil),* 409 B.R. 866 (Bankr. E.D. Mich. 2009).

Daneshgari has aggressively exercised his rights under Michigan's judgment enforcement rules, including attaching and levying much of the personal property of Plaintiffs and their families (First Amd. Compl. ¶¶ 120-134; Pls.' Resp. to Defs.' Mot. for Sanc. 2-3).  Both Plaintiffs and Defendants are now, or in the recent past have been, party to numerous lawsuits relating to the events described herein, including legal malpractice claims, bankruptcy proceedings, and state court appellate proceedings.

On January 30, 2013, Plaintiffs initiated this lawsuit alleging violations of the RICO Act, 18 U.S.C. § 1961 *et seq.*, and the FDCPA, 15 U.S.C. 1692 *et seq.*, along with seven counts of state law claims, ranging from breach of contract to conversion.  On February 22, 2013, Honorable Nancy G. Edmunds required Plaintiffs to file a "RICO case statement," within which Plaintiffs had to "describe in detail" the basis for their RICO claim (Dkt. 8).[1]  On February 25, 2013, Plaintiffs filed an Amended Complaint (Dkt. 9).  Then, on March 13, 2013, Plaintiffs filed a 57-page (and in many places single-spaced) RICO case statement (Dkt. 10).  When describing which "predicate acts" form the basis of Plaintiffs' RICO claim, Plaintiffs

---

[1] Judge Edmunds later recused herself from this matter, and it was reassigned to the undersigned (Dkts. 46, 47).

stated that they were relying on "acts of perjury, offenses under 18 U.S.C. § 1621, and acts of subordination of perjury, offenses pursuant to 18 U.S.C. § 1622" (Dkt. 10 at 38).

On June 14, 2013, "claiming newly discovered evidence," Plaintiffs moved for leave to file a Second Amended Complaint (Dkt. 41). Plaintiffs' proposed Second Amended Complaint adds new factual allegations, specifically the fact that Daneshgari did not have standing to bring the arbitration proceeding in the first place because he had relinquished his rights to any assets of CBW after defaulting on a bank loan. The proposed Second Amended Complaint is 62 pages long and contains 355 paragraphs of allegations; however, it contains only new factual allegations, no new counts, or claims (Dkt. 41, Ex. H).

On September 18, 2013, the Court heard oral argument on Defendants' Motion to Dismiss and Plaintiff's Motion to Amend the Complaint.

## II.  ANALYSIS

### A.  Standards for Motion for Leave to Amend and to Dismiss

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, amendments should not be permitted in instances of "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The test for futility ...

does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) Motion to Dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

"Rule 12(b)(6)…allow(s) a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).

"To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, (2007).  Plausibility requires showing more than the "sheer possibility" of relief but less than a 'probab[le]' entitlement to relief.  *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009*)."*

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings.  *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings.  *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010).  Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr.*, 508 F.3d at 335–36.  If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment.  *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one

for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc*., 508 F.3d at 335–36).

## B. Plaintiffs' Proposed Amendment is Futile

Defendants argue the additional factual allegations found in the proposed amendment "do not state a claim for fraud, much less a violation of RICO or the Fair Debt Collection Practices Act" (Dkt. 43, Defs.' Resp. to Pls.' Mot. for Leave to Amd. at 8). The Court agrees.

As explained below, the allegations found in the First Amended Complaint do not state a viable claim under either RICO or the FDCPA. The proposed Second Amended Complaint's newly alleged factual matter – that Daneshgari did not have standing to initiate the arbitration proceeding – does nothing to enhance the viability of Plaintiffs' RICO or FDCPA claims. Viewed through the applicable Rule 12(b)(6) standard, the proposed amendment fails to state a claim to relief that is plausible on its face, and fails to state a valid RICO or FDCPA claim. Leave to amend is therefore denied as futile.

## C.   Plaintiffs' Federal Claims Fail to State a Claim and the Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims

### *1. RICO*

Plaintiffs' RICO claims contain several defects causing them to fail to state a claim upon which relief can be granted. For example, Paragraph 179 of the First Amended Complaint states: "Defendants conspired among themselves to commit

various criminal acts through a pattern of activity that is unlawful under 18 U.S.C.

§ 1961(1)(A)."   Section 1961(1)(A)  defines "racketeering activity" to mean:

> any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year.

Plaintiffs' First Amended Complaint alleges various bad acts by Defendants, but all

of them relate to Defendants' alleged perjury at an arbitration proceeding and

Defendants' post-sale allocation of company resources. None of these allegations are

the type of criminal acts contemplated by § 1961(1)(A) such as arson, murder,

kidnapping, gambling, robbery, bribery, extortion, dealing in obscene matter or

drug dealing.  As a result Plaintiffs' RICO claim does not contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face.[2]

Furthermore, while Plaintiffs have pleaded in conclusory fashion that

Defendants "conspired" among one another, they have failed to plead the elements

of a conspiracy necessary to sustain a claim under 18 U.S.C. § 1962(d). The Sixth

Circuit has held that:

> [t]o plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging the existence of an illicit agreement to violate the substantive RICO provision.  An agreement can be shown if the defendant objectively

---

[2] Section 1961(1)'s definition of "racketeering activity" contains two subsections.  Subsection (A), alleged by Plaintiffs, is limited to those crimes ("act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance . . . ") listed above.  Subsection (B), not referenced by Plaintiffs, includes scores of other serious federal crimes, such as mail fraud, wire fraud, bribery, gambling, and obstruction of justice. See 18 U.S.C. § 1961(1)(A) and (B).  As explained in greater detail below, Plaintiffs do not adequately allege any of these other crimes as predicate offenses, in particular, obstruction of justice, mail fraud or wire fraud.

manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes.

*Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 411 (6th Cir. 2012).  In *Heinrich* the Sixth Circuit reversed the district court's dismissal of several RICO claims.  However, the complaint in *Heinrich* alleged sufficient predicate acts, specifically mail and wire fraud and extortion, to support the requisite inferences for a RICO conspiracy claim under 18 U.S.C. § 1962(d). *Heinrich*, 668 F.3d 411.  In contrast, here, Plaintiffs have not alleged any actions by Defendants that qualify as predicate acts under any section of the RICO statute, let alone the section Plaintiffs relied on, § 1961(1)(A), which, as noted above, contains a relatively circumscribed list of serious, mostly violent felonies.  Plaintiffs' allegations, specifically that Defendants bled the business by moving assets between companies;  entered into contracts with companies also owned by Daneshgari;  and offered perjured arbitration testimony, if true, may form the basis of a civil action for breach of contract, fraud, breach of fiduciary duty, conflict of interest, perjury in a state proceeding, or some other business tort.[3]  These claims do not properly form the basis of a RICO claim, for conspiracy or otherwise.

As to perjury,  it is not included among the list of predicate acts in 18 U.S.C. § 1961(1).  *See Pyramid Sec., Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C.Cir. 1991), cert. denied, 502 U.S. 822 (1991); *Rand v. Anaconda–Ericsson, Inc.*,

---

[3] Furthermore, Plaintiffs could theoretically return to state court and move to amend the state court judgment, or request relief from the judgment. The Michigan Court Rules authorize the state court to grant a new trial based upon "irregularity in the proceedings" or "misconduct…of the prevailing party."  MCR 2.611(A)(1)(a), (b).  The Michigan Court Rules authorize "relief from judgment" based on "[n]ewly discovered evidence" or "[f]raud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."  MCR 2.612(C)(1)(a), (c).  Plaintiff's counsel conceded at the hearing that this kind of relief was available.

623 F.Supp. 176, 182 (E.D.N.Y. 1985), aff'd on other grounds, 794 F.2d 843, 849 (2d Cir. 1986), cert. denied, 479 U.S. 987 (1986); *Sellers v. General Motors Corp.*, 590 F.Supp. 502, 507 (E.D.Pa. 1984).

When perjury is alleged to have been committed in a federal proceeding, some courts have found that it may qualify as a RICO predicate act because obstruction of justice in violation of 18 U.S.C. § 1503 is a listed offense under 18 U.S.C. § 1961(1)(B). *See C & W Constr. Co. v. Brotherhood of Carpenters & Joiners of Am.*, 687 F.Supp. 1453, 1467 (D. Haw. 1988), *United States v. Mayer*, 775 F.2d 1387, 1391 (9th Cir.1985) (stating that a false statement to the magistrate is properly charged under § 1503 as this was "consistent with a scheme in which frauds perpetrated upon a court in its adjudicative capacity must be prosecuted as perjury, obstruction of justice, or contempt").

In this case, the acts of perjury which the Defendants are alleged to have committed do not constitute RICO predicate acts. Section 1503 applies only to perjury offered in federal court proceedings. *See O'Malley v. New York City Transit. Auth.*, 896 F.2d 704, 708 (2d Cir. 1990) (finding that plaintiff failed to state a violation of § 1503 where the alleged acts took place in "state judicial or administrative courts, not in a federal court as required by § 1503"). Here, the alleged perjury took place in arbitration proceedings and in state court (giving rise to the $2.8 million judgment against Plaintiffs, and in the state court legal malpractice action filed by Plaintiffs against their former attorneys), not federal court (*see, e.g.,* Dkt. 41, Ex. H ¶¶ 96, 97, 99, 136, 193, 195). Although Plaintiffs also

12

allege various bad acts by Defendants in Bankruptcy Court, the allegations of perjury stem from Defendants' alleged conduct in the arbitration and state court proceedings. Thus, Plaintiffs' perjury allegations do not properly allege a predicate act, sufficient to give rise to a RICO claim.

There are other listed predicate acts under RICO that involve false statement and misrepresentation, however. For example, if Plaintiffs were to allege facts showing that Defendants' alleged lies were tied to conduct that constituted mail or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, then those acts could theoretically may serve as predicate acts, under 18 U.S.C. § 1961(1)(B).

Following the September 18, 2013 hearing on the motions before the Court, Plaintiffs – apparently recognizing that the perjury allegations alone would not constitute RICO predicate acts – filed a supplemental brief (Dkt. 50), in which they attempted to expand their alleged predicate acts to include "Bank/Fraud," "Obstruction of Justice, Bankruptcy Fraud and Mail/Wire Fraud," "Falsely Proceeding as a Creditor In Bankruptcy Cases," "Filing Adversary Proceedings in Bankruptcy to Thwart Award (sic) Dischargeability–(All the Filings were False)," "Filing Other False Adversary Proceedings in Bankruptcy Against [Plaintiffs'] Wives," "Filing Other False Adversary Proceedings in Bankruptcy Court," and "Ongoing Acts–Mail Fraud."

None of these "predicate acts" appear in any of the three lengthy Complaints (Dkts. 1, 9, 41, Ex. H). Nor did Plaintiffs allege wire or mail fraud as a predicate act in the 57-page RICO case statement (Dkt. 10) that Judge Edmunds required

13

Plaintiffs to file.  Thus, such claims have not properly been pled by Plaintiffs. Furthermore, even assuming that Plaintiffs had actually alleged these predicate acts in the Complaint, Courts have repeatedly held that in RICO cases alleging mail fraud and wire fraud as the "predicate acts", the underlying fraudulent activities must be pled with particularity.  *See, e.g., Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 673 (3rd Cir. 1988); *Van Dorn Co. v. Howington*, 623 F.Supp. 1548 (N.D.Ohio 1985); *NL Industries, Inc. v. Gulf & Western Industries, Inc.*, 650 F.Supp. 1115, 1126 (D.Kan. 1986).  Courts have routinely dismissed RICO actions where the plaintiffs, after having been given an opportunity to correct defective complaints, still failed to state with particularity the time, place, subject matter and the precise individuals who, through use of the mails or telephone, made the purportedly fraudulent statements.  For example, *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984), the Sixth Circuit affirmed the district court's dismissal of the plaintiff's RICO claims because they failed to allege the time, place, and contents of the specific misrepresentations upon which he relied.  Similarly, in *Saporito*, *supra*, the Third Circuit affirmed the dismissal of a RICO complaint where the plaintiffs failed to plead with specificity the particular persons who made the fraudulent statements upon which the plaintiffs based their action.  In *Bhatla v. Resort Development Corp.*, 720 F.Supp. 501 (W.D.Pa. 1989), after the plaintiffs had twice been granted leave to amend their complaint, they still failed to allege with specificity who made the representations upon which their RICO claims.  The court, therefore, dismissed those claims.

14

Courts rigorously enforce Fed. R. Civ. P. 9(b)'s pleading requirements in RICO cases in which the "predicate acts" are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme. *See, Berent v. Kemper Corp., supra; Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982), cert. denied, 464 U.S. 1008 (1983); *Barker v. Underwriters at Lloyd's, London*, 564 F.Supp. 352, 356 (E.D.Mich. 1983); *Otto v. Variable Annuity Life Ins. Co.*, 611 F.Supp. 83 (N.D.Ill. 1985), aff'd in part, rev'd in part, 814 F.2d 1127 (7th Cir. 1986), cert. denied, 486 U.S. 1026 (1988) (the district court found that the plaintiff failed to plead each defendant's involvement in the alleged fraud as required by Rule 9(b) and, therefore, dismissed the plaintiff's RICO count).

The allegations of Plaintiffs' Second Amended Complaint have not cured the deficiencies in the First Amended Complaint, upon which Defendants' motion to dismiss was grounded. Likewise, the additional "predicate acts" set forth in Plaintiffs' supplemental brief do not meet the pleading requirements of Rule 9(b). The Second Amended Complaint, and supplemental brief, fail to specifically identify which Defendant made which misrepresentations, or when. While Plaintiffs have generally enumerated some of the particular alleged representations upon which they relied, Plaintiffs fail to set out which Defendant mailed, or caused to be mailed, a particular written item or made a certain interstate telephone call, and when these acts occurred. Indeed, the specific allegations upon which Plaintiffs purport

15

to base their wire fraud and mail fraud claims involve renewed allegations of "perjury," not actions involving telephone conversations, wire communications, or letters or documents received in the mail. Plaintiffs' supplemental brief simply repackages their perjury claims as mail or wire fraud claims, but this does not state a claim for a RICO violation. In sum, the Court finds that Plaintiffs' conclusory allegations of mail fraud and wire fraud in Plaintiffs' supplemental brief fail to satisfy the requirements of Rule 9(b). Having made this determination, the Court finds Plaintiffs have failed to establish any predicate act upon which to base a RICO claim. *See, e.g., Gotham Print, Inc. v. Am. Speedy Printing Centers, Inc.*, 863 F. Supp. 447, 457-58 (E.D. Mich. 1994)

Therefore, Plaintiffs' RICO claims fail to state a claim upon which relief can be granted and are dismissed with prejudice.

### 2. FDCPA

Plaintiffs' FDCPA claim is also fatally flawed. By its own terms, the FDCPA does not apply to commercial debts. That is, the FDCPA defines "debt" to mean "any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes*, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5)(emphasis added).

Here, Plaintiffs allege that Defendants Daneshgari and CBW have improperly pursued the collection of a debt. According to Plaintiffs, however, the

16

underlying *debt* involved here is the result of an arbitration award stemming from a business dispute between the parties.  In light of that, Plaintiffs' claims are beyond the scope of the FDCPA, and cannot plausibly be construed as relating to a debt of a "consumer" that is "primarily for personal, family, or household purposes."  *See Van Eck v. BAL Global Fin., LLC*, Case No. 08–13436, 2009 WL 3210992, at *1 (E.D.Mich. Sept. 30, 2009) (recognizing that debt from the purchase of materials for manufacturing industrial equipment is not consumer debt); *Schram v. Federated Fin. Corp.*, Case No. 06–12700, 2007 WL 1238863, at *1 (E.D. Mich. Apr. 27, 2007) (holding that the FDCPA did not apply because it was "undisputed" that the business credit card debt was a business debt); *First Gibraltar Bank v. Smith*, 62 F.3d 133 (5th Cir. 1995) (holding that debt entered into by a partnership to acquire and develop property is not debt under the FDCPA); *Kattula v. Jade*, Case No. 07–12569, 2008 WL 495298, at *1 (E.D.Mich. Feb. 20, 2008) (holding that debt entered into by a partnership to acquire and develop property is not debt under the FDCPA).  Thus, since the underlying debt is not related to "personal, family, or household purposes," Plaintiffs' FDCPA claim fails as a matter of law.

Second, liability under the FDCPA can only attach to those who meet the statutory definition of a "debt collector."  *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003).  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed

17

or due another." 15 U.S.C. § 1692a(6).  "[A] creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts."  *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (internal quotation and citations omitted).  Plaintiffs' FDCPA claim is brought against Defendants Daneshgari and CBW.  However, these Defendants are not "debt collectors" for purposes of the FDCPA, as they are not attempting to a debt "owed or due another."  Daneshgari and CBW are judgment creditors, and their attempts to collect are not governed by the FDCPA.

As such, Plaintiffs' FDCPA claim fails to state a claim upon which relief can be granted, and is dismissed with prejudice.

### 3. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' Remaining State Law Claims

Having dismissed Plaintiffs' only federal claims, the Court is left with seven state-law claims – breach of contract, oppression of member interest in LLC, conversion, aiding and abetting conversion, accounting, breach of fiduciary duties and abuse of process. There is no diversity jurisdiction in this matter, as Plaintiffs and Defendants are all Michigan residents (Dkt. 41, Ex. H ¶¶ 1-6).  Thus, these state law claims are only in this Court by virtue of supplemental jurisdiction, as adjuncts to Plaintiffs' RICO and FDCPA claims.  A district court's supplemental jurisdiction is governed by statute, specifically, 28 U.S.C. § 1367.  The relevant portion of § 1367 states:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction

28 U.S.C. § 1367(c)

The Supreme Court, in *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009), further expounded on § 1367(c), stating that "[w]ith respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary" (internal citations omitted).  The Supreme Court has also noted that a district court, when considering whether or not to exercise its supplemental jurisdiction over state-law claims, after the dismissal of original jurisdiction claims, should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."  *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 173, (1997).

Here, Plaintiffs' state-law claims rest on allegations that involve a lengthy and convoluted procedural history in various state courts.  Moreover, these remaining claims face many procedural hurdles – including res judicata, collateral estoppel, and statutes of limitation – all of which arise under state law.  In light of

19

the all of the above, and in the interest of judicial economy and fairness to all of the parties, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Therefore, Plaintiffs' state-law claims are dismissed without prejudice.

## D. Defendants' Motion for Sanctions is Denied

Defendants have moved for sanctions against Plaintiffs for bringing this Complaint. Under Federal Rule of Civil Procedure 11, sanctions may be imposed if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988). The purpose of sanctions is to deter the abuse of the legal process. *Id*. Rule 11 was amended in 1983 to facilitate the imposition of sanctions against attorneys who disregard their professional responsibilities to the court. *Id*. As amended, the rule "stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed." *Id*. (citing Fed. R. Civ. P. 11 advisory committee's note to the 1983 amendment); *see also Century Prods., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988).

The conduct of counsel subject to a sanctions request is measured by an objective standard of reasonableness under the circumstances. *See INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 401 (6th Cir. 1987). The Court is "expected to avoid using the wisdom of hindsight and should test the

signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."  *Id.* (citation and quotation marks omitted).  "[T]he reasonable inquiry under Rule 11 is not a one-time obligation." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996) (quoting *Herron*, 858 F.2d at 335).  "[T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11."  *Id.* (quoting *Herron*, 858 F.2d at 335–36); *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010).

Defendants' primary contention in their motion for sanctions is that Plaintiffs filed this lawsuit for the sole purpose of pressuring or coercing Daneshgari to forego further collection efforts, and instead accept a "global resolution" settlement for a reduced amount of the $2.8 million judgment, concurrent with the settlement of a legal malpractice claim Plaintiffs filed against their former attorneys in the Oakland County Circuit Court (Case No. 10-112215-NM, Nichols, J.; currently in the Michigan Court of Appeals, Case No. 314374).  The Court must consider whether Plaintiffs' primary purpose in filing this lawsuit was to create leverage in settlement negotiations.

Looking first to the procedural posture of Defendants' motion for sanctions, Defendants' counsel wrote a letter dated February 5, 2013 demanding that Plaintiffs dismiss this lawsuit and threatening to seek Rule 11 sanctions if Plaintiffs did not do so (Dkt. 25, Ex. T).  However, the February 5, 2013 letter does

21

not indicate that a copy of Defendants' Rule 11 motion was served upon Plaintiffs as an enclosure to this letter. *See id.* The Court recognizes that Defendants' motion for sanctions alleges that "a copy of this [m]otion and supporting brief were served upon Plaintiffs' counsel at least 21 days before" Defendants filed their motion with the Court (Dkt. 25 at 2, CM/ECF pagination). However, at this point Defendants have not provided the Court with a proof of service or affidavit attesting to this assertion. Thus, Defendants' have provided no proof that they properly complied with the procedural requirements for filing a Rule 11 motion for sanctions. Rule 11(c)(2), commonly referred to as the safe harbor provision, states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets....

In accord with the plain language of that provision, the Sixth Circuit has made clear that "a party seeking sanctions must follow a two-step process: first, serve the Rule 11 motion on the opposing party for a designated period (at least twenty-one days); and then file the motion with the court." *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997). Here, the record does not establish that Defendants complied with the requirement that they serve the motion for sanctions at least 21 days prior to filing or presenting it to the Court. Thus, Defendants' motion for sanctions should be denied based on this procedural defect.

Second, the Court has reviewed the complex procedural background of this case, its underlying facts, and is cognizant of the parties' history of mistrust and

extreme litigiousness.  Viewing all the circumstances, there is insufficient evidence in the record at this stage to support a conclusion that Plaintiffs' attorneys' conduct was objectively unreasonable.  Having said that, the Court can understand Defendants' frustration with what appears to be Plaintiffs' continuing attempts to collaterally attack the arbitration award and subsequent confirmation judgment. Any future attempts to do so should be very closely scrutinized.

### III.   CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' motion for leave to amend (Dkt. 41).  As to Plaintiffs' RICO claim (Count I) and FDCPA claim (Count IX) the Court **GRANTS** Defendants' motion to dismiss (Dkt. 24), and those claims are **DISMISSED WITH PREJUDICE**.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, and hereby **DISMISSES WITHOUT PREJUDICE** Counts II through VIII.  The Court **DENIES** Defendants' motion for sanctions (Dkt. 25).  Finally, Plaintiffs' motion to compel discovery (Dkt. 29) is **DENIED AS MOOT**.

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  February 14, 2014

23

## **Certificate of Service**

I hereby certify that this Order was electronically submitted on February 14, 2014, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager